1

2

3

4

5                     UNITED STATES DISTRICT COURT

6                     EASTERN DISTRICT OF WASHINGTON

7    In Re:

8    LLS AMERICA, LLC,                    NO:  2:12-CV-6-RMP

9                          Debtor,        Bankr. Case No. 09-06194-FPC11

10   BRUCE P. KRIEGMAN, solely in his     Adv. Proc. No. 11-80130-FPC11
     capacity as court-appointed Chapter 11
11   Trustee for LLS America, LLC,        AMENDED FINDINGS OF FACT
                                          AND CONCLUSIONS OF LAW
12                          Plaintiff,
     v.
13
     THEODORE SCHULTZ,
14
                            Defendants.
15

16

17        This consolidated action was tried before the Court on September 2, 2014.

18   Plaintiff, Bruce P. Kriegman, the court-appointed Chapter 11 Trustee for LLS

19   America, LLC ("Trustee"), was represented by Richard L. Mount and Samuel C.

20   Thilo of Witherspoon Kelley.  The Court hereby amends its prior Findings of Fact

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

and Conclusions of Law, ECF No. 118, to reflect the Court's finding that all transfers to and from Defendants were in Canadian currency.

Dillon Jackson and Adam Coady of Foster Pepper appeared telephonically on behalf of Defendants Geoff Toews, Rory and Cathy Bjarnason, and CLB Holdings (collectively, "Defendants").    Foster Pepper previously moved to withdraw as counsel for all Defendants because Defendant Toews had terminated them as his counsel and because Defendants Bjarnason and CLB Holdings had ceased all communication with Foster Pepper.   ECF Nos. 56, 100.   The Court denied Foster Pepper's motions.   ECF Nos. 80, 112.   At trial, Foster Pepper explained that it attended trial in order to comply with the Court's orders but that it lacked authority to represent Defendants.   Defense counsel stated that it knew of no contact from Defendants.   Defendants themselves were not present at trial.

Having heard witness testimony, having reviewed the admitted exhibits, and being fully informed, the Court makes the following findings of fact and conclusions of law:

## PREVIOUS RULINGS

### 1.    Ponzi Scheme and Insolvency

On July 1, 2013, the Bankruptcy Court issued its Report and Recommendation Re Plaintiff's Motion for Partial Summary Judgment on

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2

Common Issues ("Report and Recommendation") recommending that the District Court grant the Trustee's Amended Motion for Partial Summary Judgment on two "Common Issues": (1) Debtor operated a Ponzi scheme; and (2) Debtor was insolvent at the time of its transfers to Defendants.  On August 19, 2013, this Court adopted the Bankruptcy Court's Report and Recommendation and entered an order granting the Trustee's Amended Motion for Partial Summary Judgment on the Common Issues ("Order Adopting Report and Recommendation").  *See* 2:11-cv-00357-RMP, ECF No. 92.  Therefore, this Court has determined that Debtor operated a Ponzi scheme and was insolvent at the time of each of the transfers to Defendants.

All of the findings and conclusions set forth in the Report and Recommendation and the Order Adopting Report and Recommendation are incorporated by this reference and are the law of this case.

### 2.    Omnibus Hearing for the Testimony of Charles B. Hall

On January 31, 2014, this Court entered its Order Granting Plaintiff's Motion for Omnibus Hearing.  ECF No. 55.  Pursuant to that Order, the court-appointed examiner, Mr. Charles B. Hall, testified at an Omnibus Hearing in open court commencing on February 25, 2014.  His testimony consists of written direct examination testimony that was filed on or about February 17, 2014, and the oral testimony that he gave at the Omnibus Hearing.  Mr. Hall was cross examined by

several defense attorneys, including those from Foster Pepper, and by some pro se defendants.  Mr. Hall's testimony at the Omnibus Hearing is part of the record in this adversary action.

## FINDINGS OF FACT

1.    Debtor is the Little Loan Shoppe group of companies, which was formed originally in 1997.  PO-1 at 11.

2.    Debtor operated a Ponzi scheme, whereby investors' loans were sometimes used to pay other investors' promised returns on investments.  PO-1 at 16.

3.    Over the course of its existence, Debtor acquired approximately $135.4 million in funds invested by individual lenders, documented by promissory notes promising interest in the range of 40% to 60% per annum.  PO-1 at 7 n.2, 15.

4.    Defendants are lenders who received payments from Debtor.

5.    Debtor accumulated payday loan bad debts of approximately $29 million, which were written off in 2009.  PO-1 at 41.

6.    Debtor was never profitable at any time during its existence and, thus, at no time did it generate sufficient profits to pay the amounts due the lenders.  PO-1 at 16, 53.

7.    Defendants Rory and Cathy Bjarnason and Geoff Toews made loans to Debtor.  P-23; P-63.

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4

8.    All Defendants received multiple payments from Debtor.  P-23; P-33; P-63.

9.    Dozens of the payments that Defendants received were written on checks showing Debtor's Spokane address.  P-24 at 13-98; P-34 at 1-20; P-64 at 143-389.

10.    Debtor voided approximately 29,000 of the post-dated checks that it had issued to lenders, including Defendants.  PO-1 at 26; P-25; P-35; P-65.

11.    Defendant Toews received promissory notes that were "rolled into" or renewed into other promissory notes.  P-66 at 256-57, 259.

12.    Defendants Bjarnason made a number of loans without receiving any promissory note or other written documentation in return.  P-26 at 12; *see also* P-20 at 2.

13.    All of the transfers that the Trustee seeks to avoid were made within the period of September 1997 to July 21, 2009.  P-23; P-33; P-63.

14.    Indicia and characteristics of the Ponzi scheme present in this case include:

    a.    Proceeds received from new investors masked as profits from running a payday loan business; PO-1 at 16, 22;

    b.    Promise of a high rate of return, usually between 40% to as much as 60%, on the invested funds; PO-1 at 19;

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

c.    Debtor paid commissions to third parties who solicited new lenders, typically 10% annually of the amount received from the new lender; PO-1 at 20-21;

d.    Debtor solicited funds as loans evidenced by promissory notes but demonstrated a pattern of "rolling over" the promissory notes when due onto new notes instead of paying off the obligation; PO-1 at 26;

e.    Debtor, throughout its history, made false and misleading statements to current and potential lenders; PO-1 at 53-54;

f.    Debtor was insolvent from its inception to the filing of its bankruptcy; PO-1 at 67.

15.    The court-appointed examiner, Charles B. Hall, by way of education, experience, and vocation, is qualified to analyze and review the legitimacy of an enterprise's operation and to detect a fraud based on Ponzi scheme operations.

16.    Mr. Hall's expert opinion is credible.

17.    Mr. Curtis Frye's testimony, which pertained to Debtor's record keeping and the accounting of investment, payments, and consulting fees/commissions to Defendants, is credible.

18.    Defendants received interest and principal payments from Debtor.

19.    Defendants are "net winners."

20.    Defendants were promised high rates of return from Debtor and were issued promissory notes with a promised rate of return between 40% and 60% per annum.  P-26 at 12, 33, 34; P-36 at 10; P-66 at 20.

21.    There is no evidence that the Bjarnason Defendants or Defendant CLB Holdings ever received any account statements or financial statements from Debtor.  *See* P-26 at 9-11, 13; P-36 at 8-9, 10-11.  Defendant Toews's response to an interrogatory indicates that he was permitted to view a limited number of financial statements, but that Debtor did not allow Defendant Toews to remove the statements from her custody or to make copies of them.  P-66 at 21.

22.    Defendants received post-dated checks from Debtor.  P-26 at 16-17; P-36 at 13; P-66 at 29.

23.    Defendant Toews loaned funds to Debtor after Debtor had "rolled" earlier loans into new promissory notes when payment became due.  *See* P-60 at 3; P-62 at 1.

24.    Cathy Bjarnason was the owner of CLB Holdings.  P-36 at 8, 17.

25.    Plaintiff requests the Court to pierce the corporate veil and hold Defendant Cathy Bjarnason liable for any judgment that the Court imposes on the Defendant CLB Holdings.  Washington courts have established two factors necessary to show that the corporate form should be disregarded.  "First, the corporate form must be intentionally used to violate or evade a duty; second,

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

1  disregard must be 'necessary and required to prevent unjustified loss to the injured

2  party.'" *Meisel v. M & N Modern Hydraulic Press Co.*, 97 Wn. 2d 403, 410

3  (1982) (quoting *Morgan v. Burks*, 93 Wn.2d 580, 587 (1980)).

4      26.    A court may pierce the corporate veil under the alter ego theory

5  "when 'the corporate entity has been disregarded by the principals themselves so

6  that there is such a unity of ownership and interest that the separateness of the

7  corporation has ceased to exist.'" *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548,

8  553 (1979) (quoting *Burns v. Norwesco Marine, Inc.*, 13 Wn. App. 414, 418

9  (1975)). *See also J. I. Case Credit Corp. v. Stark*, 64 Wn. 2d 470, 475 (1964)

10  ("[T]here must be such a commingling of property rights or interests as to render

11  it apparent that they are intended to function as one, and, further, to regard them as

12  separate would aid the consummation of a fraud or wrong upon others.").

13      27.    Undercapitalization of a corporate entity, by itself, does not constitute

14  abuse of the corporate form, *Norhawk Investments, Inc. v. Subway Sandwich*

15  *Shops, Inc.*, 61 Wn. App. 395, 399-400 (1991), although "there may be situations

16  in which a corporation is so thinly capitalized that it manifests a fraudulent

17  intent," *Truckweld Equip. Co., Inc. v. Olson*, 26 Wn. App. 638, 645 (1980).

18      28.    The Court finds that Defendant Cathy Bjarnason used Defendant

19  CLB Holdings as an alter ego.  Defendant CLB Holdings' banking records

20  indicate that Defendant Cathy Bjarnason used the entity's coffers as an extension

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8

of her personal account.  For example, the records show multiple months during which funds were transferred from an account in Defendant Cathy Bjarnason's name into CLB Holdings' account, but the exact same amount was withdrawn again shortly thereafter.  *See, e.g.*, P-36 at 32, 33, 38, 40, 49.  Similarly, transfers from Debtor frequently were transferred or withdrawn from Defendant CLB Holdings shortly after checks from Debtor had been deposited.  *See, e.g.*, P-36 at 54-55, 69-70, 83, 90, 96.  These practices often left only a small amount of funds in the entity's account, which at times contained less than $50.00.  *See, e.g.*, P-36 at 70, 71.

29.    Defendant Cathy Bjarnason presented no proof to contradict this evidence that she disregarded the separate corporate form of CLB Holdings and instead treated the company's assets as her personal funds.  Moreover, the Court finds that Defendant Cathy Bjarnason must be held liable for any judgment that the Court imposes on Defendant CLB Holdings in order to minimize injury to other creditors.  Accordingly, the Court pierces the corporate veil.

30.    Defendants Rory and Cathy Bjarnason are net winners.  The following summarizes the evidence of investments made by them and the payments that they received:

| | |
|---|---|
| Total Payments: | $228,900.00 CAD |
| Total Investments: | $103,000.00 CAD |
| MIMO: | $125,900.00 CAD |

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9

31.    Defendant CLB Holdings is net winner.  The following summarizes the evidence of investments made by it and the payments that it received:

| | |
|---|---|
| Total Payments: | $99,250.00 CAD |
| Total Investments: | $0.00 |
| MIMO: | $99,250.00 CAD |

32.    Defendant Geoff Toews is a net winner.  The following summarizes the evidence of investments made by him and the payments that he received:

| | |
|---|---|
| Total Payments: | $388,219.39 CAD |
| Total Investments: | $175,000.00 CAD |
| MIMO: | $213,219.39 CAD |

33.    Total transfers to Defendants are as follows:

- Rory and Cathy Bjarnason for $228,900.00 CAD;

- CLB Holdings for $99,250.00 CAD;

- Geoff Toews for $388,219.39 CAD.

34.    All transfers to Defendants were made with actual fraudulent intent and in furtherance of a Ponzi scheme.

**CONCLUSIONS OF LAW**

1.    This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(d).

2.    This Court has jurisdiction over Defendants.

3.    This action was timely commenced.

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

4.    At least one unsecured creditor existed who triggered the strong arm power of 11 U.S.C. § 544(b)(1) because the creditor did not and should not reasonably have discovered the fraudulent nature of Debtor's Ponzi scheme transfers within one year before the bankruptcy petition was filed.  *See* 2:11-cv-00362-RMP, ECF No. 197.

5.    Washington State law governing fraudulent transfers applies.

6.    Under the statutes relating to fraudulent transfers, 11 U.S.C. § 548 and RCW 19.40, *et seq.*, payments received from Debtor are recoverable from each Defendant by the Trustee, subject to the defense of good faith pursuant to 11 U.S.C. § 548(c) and RCW 19.40.081(a).

7.    Transfers made in furtherance of a Ponzi scheme constitute actual fraud under the Bankruptcy Code and Washington's version of the Uniform Fraudulent Transfer Act (UFTA).  *See* Bankr. Adv. Proc. No. 11-80299-FPC, ECF No. 378 at 21-25.  "Where causes of action are brought under UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ."  *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008).

8.    A transferee of a fraudulent transfer may keep funds that it took for reasonably equivalent value and in good faith.  *See* 11 U.S.C. § 548(c); RCW

19.40.081(a).  As recipients of transfers that constitute actual fraud, the burden of proof in establishing the affirmative defense of good faith is on Defendants.  *In re Agric. Research and Tech. Grp., Inc.*, 916 F.2d 528, 535 (9th Cir. 1990); 5 COLLIER ON BANKRUPTCY ¶ 548.09[2][c] at 548-98.2 (16th ed. 2011).

9.     Although "good faith" is not defined precisely in case law, at least one court has noted that the absence of good faith is shown by a transferee who knows that a debtor is operating a Ponzi scheme.  *See In re Agric. Research*, 916 F.2d at 535 (citing *In re Indep. Clearing House*, 77 B.R. 843, 861 (D. Utah 1987)).  The Ninth Circuit has quoted favorably an explanation in an early case that a transferee's "knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors . . . should be deemed to have notice . . . as would invalidate the sale as to him."  *Id.* at 535 (quoting *Shauer v. Alterton*, 151 U.S. 607, 621 (1894)).

10.    Thus, courts measure good faith by an objective standard, looking to what a transferee "'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint."  *Id.* at 536.

11.    Under the Bankruptcy Code, Washington's UFTA, as well as relevant case law, the Court does not contemplate a recipient's intent when

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12

1    deciding whether to avoid fraudulent transfers.  5 COLLIER ON BANKRUPTCY ¶

2    548.04[2] at 548-63; *Thompson v. Hanson*, 168 Wn.2d 738, 749 (2010).

3    Accordingly, a transfer that constitutes actual fraud is avoided in its entirety

4    unless the transferee establishes that a reasonable person in the transferee's

5    position would not and should not have known of the fraud, not simply whether he

6    or she *actually* acted in good faith.

7        12.    Transfers made by Debtor in furtherance of its Ponzi scheme are

8    transfers made with actual intent to hinder, delay and/or defraud creditors under

9    both state law, RCW Ch. 19.40, and federal law, 11 U.S.C. § 548(a)(1).

10       13.    As    discussed    above,    Defendants    terminated    or    stopped

11   communicating with their counsel and did not personally attend trial, participate at

12   trial, or offer any evidence.   Thus, Defendants have not met their burden of

13   establishing that they acted in good faith.

14       14.    Under RCW 19.40.041(a)(1), RCW 19.40.091(a) and the "strong arm

15   powers" that 11 U.S.C. § 544(b)(1) grants to bankruptcy trustees, all of Debtor's

16   transfers to Defendants, regardless of the date of transfer, are hereby set aside and

17   avoided.

18       15.    The Trustee is entitled to claw back and recover all transfers to

19   Defendants.

20

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

16.     The Trustee is entitled to repayment of all commissions without any right of off set.

17.     Defendant CLB Holdings, operating through Cathy Bjarnason, was the initial transferee of payments received from Debtor, and the Trustee is entitled to recover all transfers to Defendants.

18.     The Trustee is entitled to pre-judgment interest at the applicable federal rate from July 21, 2009, when the bankruptcy case commenced.

19.     Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Rory and Cathy Bjarnason** in the amount of **$228,900.00 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

20.     Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **CLB Holdings and Cathy Bjarnason** in the amount of **$99,250.00 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14

interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

21.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Geoff Toews** in the amount of **$388,219.39 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

22.    The Trustee is entitled to reimbursement of its costs for pursuing this action.

23.    Trustee is awarded all applicable interest, costs and disbursements of this action against each Defendant.

**IT IS SO ORDERED**.

The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 13th day of January 2015.

　　　　　　　　　　　*s/ Rosanna Malouf Peterson*
　　　　　　　　　　ROSANNA MALOUF PETERSON
　　　　　　　　　　Chief United States District Court Judge

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 15